Frank Holt, Justice. The appellant, by a petition for mandatory injunction, sought to require the appellee, at its own expense, to screen its junkyard or remove it 1000' from the adjacent highway right-of-way. The appellee responded by asserting Ark. Stat. Ann. § 76-2513 et seq. (1971 Supp.) (Act 640 of 1967), which gives the appellant the asserted authority, is illegal, unconstitutional and void in that it purports to authorize the appellant to take appellee’s property without due process of law and adequate compensation. The chancellor held the statute unconstitutional as applied to the appellee because it is in violation of our constitution which prohibits the taking of private property for public use without just compensation. For reversal the appellant contends “[Tjhat the trial court erred in holding Act 640 of 1967 unconstitutional as applied to the appellee, *** and by denying and dismissing the appellant’s petition for a mandatory injunction pursuant to the aforesaid act.” We agree with the chancellor. In 1955 our legislature enacted Act 212 (Ark. Stat. Ann. § 76-129 et seq.) to regulate the existence of junkyards. That Act provided for a $100 per day penalty whenever a person keeps or maintains ”***[A]ny place where five (5) or more junk, wrecked or non-operative automobiles or other vehicles are deposited, parked, placed, or otherwise located***” within one-half mile of any paved highway of this state. In Bachman v. State, 235 Ark. 339, 359 S.W. 2d 815 (1962), we construed the Act unconstitutional because it was arbitrary and unreasonable. In doing so, however, we quoted as follows from W. C. Farley, etc., v. Patrick C. Graney, State Road Commissioner, etc., W. Va., 119 S. E. 2d 833: “***It can not be gainsaid that at this time the great weight of authority is to the effect that esthetic considerations alone will not justify the exercise of legislative authority under the police power. But on the other hand, it is perhaps just as well established that esthetic considerations may be given due weight in connecdon with other factors which support legislative exercise of the police power. It is clear also that there is in this day a marked tendency to accord greater importance to esthetic considerations.’” Then we said: “In this modern age when our highway system is being expanded and improved, and when more attention is being given to their beautification for the attraction of tourists, we deem it wise not to close the door on the aforementioned tendency to broaden the scope of the State’s police power.” Five years later the legislature enacted our present Act 640 of 1967 (§ 76-2513 et seq.), which provides that the operation of a junkyard is a public nuisance whenever it is located within 1000' of the nearest edge of the right-of-way of any Interstate, Primary, or other State Highway designated by appellant, unless it is screened from the view of the traveling public or removed a distance of more than 1000' from the nearest right-of-way line. The Act authorizes the appellant “to promulgate rules and regulations governing the location, planting, construction, and maintenance, including materials used therein, of the screening and fencing required under this Act.” As indicated, this litigation resulted when the appellee refused to comply with appellant’s requirement that appellee screen or remove, at its own expense, its junkyard from public view. It appears that for approximately twenty years this type of operation was conducted at the present location. The appellee has owned and operated this business since October 1, 1965, or before the enactment of the present legislation. The business fronted upon an existing highway within the city limits of West Helena, Arkansas. In 1966 or a year before the present Act, appellant, at its expense, constructed and completely screened the 500' frontage of appellee’s salvage operation adjacent to the then existing highway so that the salvage yard was invisible to the traveling public. This screen was approximately 10' in height. About two years later the Helena Loop or bypass was constructed adjacent to another portion of appellee’s property. This resulted in another public exposure of the existing junkyard. The appellant erected a transparent type chain link fence approximately 6' in height along the 611' frontage of this bypass. Subsequently, the appellant, pursuant to the rules and regulations as authorized by the provisions of Act 640 of 1967, demanded that appellee effectively screen the renewed exposure of its operation from the view of the traveling public. According to the appellee, its business investment totaled $100,000 and it would require an expenditure by it of approximately $7,000 to comply with the type of screen that the appellant had constructed at its own expense a few years previously on the other side of appellee’s property. Appellee had insufficient space to “move back 1000 feet.” The narrow issue posed is whether the imposition of this expense upon the appellee is a taking or exaction of his property rights without just compensation and due process of law. It is undisputed that at the time of the enactment of the Act in question the appellee was conducting a lawful business. Article Two, Section 22, of the Constitution of our State provides: “The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation.” It was aptly said in Ark. State Highway Commn. v. Union Planters National Bank, 231 Ark. 907, 333 S.W. 2d 904 (1960): ‘“The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.’” In the case at bar, as appellant asserts, the police power of the state has long existed to validly impose regulations pertaining to property usages. However, it does not follow that such power can be exercised in an absolute and arbitrary manner. Tn City of Little Rock v. Hocott, 220 Ark. 421, 247 S.W. 2d 1012, (1952), a zoning case, we said: “Thus we have a conflict in the evidence as to whether the area in question is susceptible of use or development for one-family residences, as restricted by the ordinance, and also whether the development and use contemplated by appellees would adversely affect the value and use of other residential property in the neighborhood. If both questions are answered in the negative, then the action of the council in rejecting the petition of appellees is unreasonable and arbitrary, as applied to the area in question, in that it constitutes an unlawful deprivation of the use of the property by appellees.” Also, the rule of law is well established that when a property owner suffers damages special in nature to himself and not suffered by the public in general, the property owner is entitled to just compensation. Wenderoth v. Baker, 288 Ark. 464, 382 S.W. 2d 578 (1964), Ark. State Hwy. Commn. v. McNeill, 238 Ark. 244, 381 S.W. 2d 425 (1964). In the case at bar, we do not construe Bachman v. State, supra, as being broad enough to permit the enactment and enforcement of legislation which would require the appellee, whose business was in lawful existence at the time of the passage of this Act, to be burdened with the expense of screening his property upon the relocation of the highway. The Act actually recognizes that just compensation “shall be paid” to the owner of a junkyard in certain circumstances. It provides “that when the Commission determines that the topography of the land will not permit adequate screening or the screening would not be economically feasible, then just compensation shall be paid for the relocation, removal or disposal” of junkyards lawfully in existence. Appellee’s junkyard was lawfully in existence when the Act was enacted. Since the Act provides that, in the above enumerated instances, the owner “shall” be justly compensated, it is difficult to perceive why appellee should be required to screen his lawful business from public view without just compensation. We agree with the chancellor that the imposition of the cost of the screening upon appellee would be a deprivation of his vested property rights without just compensation and, therefore, is unconstitutional as applied to him. Affirmed. Brown, J., not participating.